IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

MARION S. LEBON and
LISA L. COWAND                                              **PLAINTIFFS**

VS                                        CASE NO. 1:08-CV-509-LTS-RHW

STATE FARM FIRE & CASUALTY COMPANY                  **DEFENDANT**

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION TO COMPEL
EMAILS AND ELECTRONIC COMMUNICATIONS AND DATA**

COME NOW Plaintiffs, Marion S. Lebon and Lisa L. Cowand ("Plaintiffs"), by and through counsel, and file this Memorandum in Support of Plaintiffs' Motion to Compel, filed contemporaneously herewith.

**I.      BACKGROUND**

On or about February 9, 2009, the parties engaged in a Case Management Conference wherein Plaintiffs' counsel sought to address electronic discovery matters early in the case management by submitting its proposed Case Management Order specifically identifying topics regarding Electronically Stored Information (ESI) and submitting an attached Exhibit A, IT Questionnaire.  (Exh. A, Plaintiffs' Proposed Case Management Order.) During the Case Management Conference, Defendant was not required to answer the IT Questionnaire, as the Court determined that the information sought could be sought in discovery requests or 30(b)(6) depositions.

On or about February 6, 2009, Plaintiffs served discovery requests to Defendant, which contained numerous requests for information regarding Defendant's first party property claims handling procedures; the investigation and handling of Plaintiffs' claims; Defendant's data storage systems, retention policies and procedures; and paper and

electronic communication transmittals, among other requests seeking relevant information and data.

Plaintiffs submit that State Farm keeps all claims investigation and handling information and data in an electronic claim file(s) residing on various databases and servers. Federal Rules of Civil Procedure 34(b)(1)(C) provides that " The request may specify the form or forms in which electronically stored information is produced." Further, Federal Rules of Civil Procedure 34(b)(2)(D) allows a responding party to object to a request for production of electronically stored information as an objection in the party's response: "The response may state an objection to a requested form for producing electronically stored information. If the responding party objects to a requested form—or if no form was specified in the request—the party must state the form or forms it intends to use."

Pursuant to Rule 34 Requests for Production, Plaintiffs requested electronically stored information and data be produced in a specified format, as detailed in the sections, Instructions and Definitions, preceding the Specific Requests. (Exh. B, Plaintiffs' Request for Production Definitions and Instructions Sections.) Defendant, State Farm, asserted no objections to the Plaintiffs' requested form of production. Therefore, Defendant, State Farm, has waived any objection to the form of production for electronically stored information and should be required to produce all relevant and responsive electronically stored information in accordance with Plaintiffs' requested form of production.

Further, Federal Rules of Civil Procedure 26(a)(1)(A)(ii) requires that a party must, without awaiting a discovery request, provide to the other parties "a copy—or description

by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims, or defenses, unless the use would be solely for impeachment;" Defendant State Farm has not complied with the requirements of this rule. Information and data regarding Defendant's denial of Plaintiffs' claims and its defenses to Plaintiffs' claims has not been provided or described by category and location. Defendant has numerous databases where relevant, responsive electronically stored information resides. Further, Defendant has control over relevant, responsive information and data in the possession of its third party vendors such as independent adjusters and engineers utilized by and relied upon by Defendant to assess and either deny or pay Plaintiffs' claims.

Moreover, Federal Rules of Civil Procedure 26(a)(b)(1) provides the general scope of discovery allowing that "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense—**including the existence, description, nature, custody, condition and location of any documents or other tangible things** and the identity and location of persons who know of any discoverable matter." (Emphasis added.) Again, Defendant has not provided relevant, responsive information, documents, and data, including the existence, description, nature, custody, condition and location of any documents or other tangible things as requested by Plaintiffs.

Plaintiffs have propounded numerous requests for information to Defendant State Farm regarding its document retention and storage; paper and electronic communication transmittals; first party investigation and claims handling procedures; and information, documents and data related to the investigation and handling of Plaintiffs' claims.

3

Plaintiffs have repeatedly requested that the Defendant State Farm provide relevant, responsive information regarding the existence, description, nature, custody and location of documents, including electronically stored information, and other tangible things, including electronic and digital equipment, to which Defendant has offered only blanket objections and/or has refused to respond at all. Please see Defendant's objections to Plaintiffs' discovery requests as outlined in Plaintiffs' Motion to Compel specific responses filed contemporaneously herewith.

Plaintiffs have taken the deposition of engineers hired by Defendant to inspect Plaintiffs' property four years after Hurricane Katrina.  At the depositions of engineers from The Structures Group, Deponent Michael Matthews, P.E., discussed communications with State Farm through the use of FileZilla, email, document repository access, FTP, and other electronic data communicating and sharing systems. (Exh. C, Excerpts of Matthews Deposition.) Defendant, State Farm, has not provided a description by category and location of any of these documents, electronically stored information, and tangible things as required by Federal Rules 26(a)(1)(A)(ii) and pursuant to Federal Rules 26(a)(b)(1).  Defendant should be compelled to provide this required information and data immediately.

Plaintiffs have taken the deposition of Pilot Catastrophe adjuster, Curtis Hilgerson, who testified that he had a laptop and digital camera issued by Defendant State Farm to him with an ID No.  He further testified that after he finished his inspections he returned the laptop, digital camera and all paper files to Defendant State Farm.  (Exhibit D, Deposition Excerpts of Hilgerson.) Defendant State Farm has not provided this required and requested relevant information and should be compelled to do so immediately.

The Plaintiffs' Claim file, printed from the CSR database and furnished by Defendant State Farm in response to Plaintiffs' Requests for Production is incomplete and contains unexplained changes. The location and nature of this information should have been provided, as required by Federal Rules 26(a)(1)(A)(ii), to Plaintiffs, without Defendant's awaiting a discovery request. Further, in the deposition of Curtis Hilgerson, Mr. Hilgerson testified that could not determine if he took the photographs produced by State Farm from two separate site visits, even after he determined that he only made one site visit. Had these photographs been produced in native electronic format as requested by Plaintiffs, the metadata would have disclosed this relevant information. (Exhibit D, Deposition Excerpts of Hilgerson.) Defendant State Farm should be compelled to produce this relevant, responsive information and data in the format requested by Plaintiffs, immediately.

Though, Defendant State Farm has stated in its responses that emails will be supplemented, the only emails produced in this action have come from the State Farm department and/or database regarding mediations held due to Defendant's agreement with the Attorney General. The few emails which have been produced further show the necessity of the required information of Federal Rules 26(a)(1)(A)(ii) regarding a description by category and location of all documents, electronically stored information (ESI), and tangible things, as these emails request movement of the Plaintiffs' electronic file from one database to another. (Exh. E, Emails). Defendant has not supplemented other requested relevant, responsive emails and should be required to produce all such emails, with attachments; producing them in the native format requested by Plaintiffs, organized by custodian or relevant folder and in chronological order; and in a reasonably

useable form, meaning once searchable data cannot be produced in an unsearchable format.

Further, electronically stored information produced this case and represented as the Plaintiffs' "underwriting file" was produced by Defendant State Farm in the format of non-searchable, .pdf images of screen shots from the PDQ database.  This is not in the format requested by Plaintiffs, nor in the form required by the Federal Rules.  Further, the arbitrarily chosen format of production by Defendant State Farm is not even in a reasonably usable form, as Defendant State Farm converted searchable electronically stored data into non-searchable, .pdf images.

Moreover, had Defendant State Farm produced relevant, responsive information regarding the existence, description, nature, custody and location of documents, including electronically stored information (ESI), as requested by Plaintiffs', particularly, manuals on the databases and electronic claims files, Plaintiffs' would have been afforded the opportunity to ascertain and specify exactly which reports to run from the PDQ database and other databases.  (Exh. F, PDQ Reports.)  Defendant should be required to produce a all relevant, responsive information and data and/or a description by category and location of all documents, ESI and tangible things, including all database manuals and electronic claim file manuals immediately.

## II.    LEGAL STANDARDS AND ARGUMENT

### A.    Discovery is Broad in Scope and Liberally Permitted in Civil Cases.

The Federal Rules of Civil Procedure determine the extent of discovery in federal civil cases.  "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense—including the existence, description, nature,

custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." The rule further states that "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1).

Under this rule, the scope of discovery is broad and liberally permissive. *Liberty Mutual Ins. Co*., *et al. v. Tedford*, 2008 WL 2080930 at 5 (N.D. Miss. 2008). The purpose of discovery is to give all parties a fair opportunity to gather and discover all of the facts that are important to the issues being litigated, wherever such pieces of information may be found. *State through Dept. of Highways v. Spruell*, 142 So.2d 396, 397 (La. 1962). *See also Kreger v. General Steel Corp.*, 2008 WL 782767 (E.D. La. 2008). Discovery also functions as a tool by which litigants prepare their respective cases for trial and clarify the issues that will be litigated. *Id. See also Comcast of Los Angeles, Inc. v. Top End Intern., Inc.*, 2003 WL 22251149 (C.D. Cal. 2003). The broad use of discovery may also lead to pre-trial settlement of the dispute. *Id.*

The Federal Rules also give considerable discretion to Courts to manage discovery. *Kreger*, 2008 WL 2080930 at 2. In light of the broad scope of discovery permitted by the rules and the purpose of discovery, Courts often avoid placing significant restrictions on the discovery process. *Rubin v. Islamic Republic of Iran*, 349 F. Supp.2d 1108, 1111 (N.D. Ill. 2004). *See also Machinery Movers, Riggers, and Machinery Erectors, et al. v. Fidelity an Deposit Co. of Maryland, et. al.,* 2007 WL 3120029 (N.D. Ill. 2007).

Moreover, Federal Rules of Civil Procedure 26(a)(1)(A)(ii) requires that a party must, without awaiting a discovery request, provide to the other parties "a copy—or description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims, or defenses, unless the use would be solely for impeachment;"

Defendant has a duty and obligation to identify, locate and describe all relevant and potentially relevant documents, electronically stored information and tangible things in its possession, custody and control and to provide that information to Plaintiffs. Defendant should be compelled to properly respond to Plaintiffs' discovery requests and to produce all relevant and potentially relevant information immediately.

### B. Plaintiffs' Requests for Information, Documents and Data are Relevant or Would Likely Lead to the Discovery of Admissible Evidence

Plaintiffs have filed numerous claims against Defendant, including contractual and extra-contractual claims. Where the subject matter of litigation is the insurance company's conduct, internal claims documents, memoranda, insurance claims procedures, documents regarding claims goals and philosophies, electronic diaries and emails are the most truthful and accurate reflection of how an insurance company acted toward its policyholder.

The claim file for Plaintiffs' claim is a crucial piece of evidence in this case. Other Courts and commentators around the country have noted the importance of the claim file in insurance litigation. *See, e.g. Boone v. Vanliner Ins. Co.*, 744 N.E.2d 154 (Ohio 2001); *Silva v. Fire Ins. Exch.*, 112 F.R.D. 699 (D. Mont. 1986) (insured may

compel insurer to disclose entire claims file and may offer contents as exhibits at trial because bad faith can only be proved by showing manner in which claim was processed and claims file is sole source of this information); *Bergeson v. Nat'l Security Corp.*, 112 F.R.D. 692 (D. Mont. 1986); *see also* Garrity, *Discovery of an Insurer's Files: Now You See It, Now You Don't*, 20 Forum 20 (1984); Harley, *Accessing Insurance Company Claim Files*, 65-SEP Wisc. Law. 10 (1992); Kaplan, *Discovery of Claim Files in Bad Faith Litigation*, 33:2 For the Defense 9 (1991); Workman, *Plaintiff's Right to the Claim File, Other Claims Files and Related Information: The Ticket to the Gold Mine*, 24 Tort & Ins. L.J. 137 (1988).

Plaintiffs contend that the information sought is relevant, factual information and not privileged; that there are no other practical means available to obtain the same information due to the nature of the information sought; and, that the factual information sought is crucial to the preparation of the Plaintiffs' case. Plaintiffs have not received and are in need of all non-privileged documents including emails, electronic communications, Engineer Request Forms, and Operation Guides, etc., which are in anyway related to Plaintiffs' claims and may lead to discoverable evidence.

Therefore, Plaintiffs contend they are entitled to production of the entire claims file, including correspondence, emails, investigative reports, training manuals, company policies and philosophies, factual evidence gathered from investigations used to deny Plaintiffs' claim and any other non-privileged and/or non-protected information known to the Defendant. Further, Plaintiffs contend that the entire claim file is not merely the claim file at the local Claims Representative's level, but also includes the regional claims file, and all other claims files in the hierarchy.

Plaintiffs' discovery requests can basically be categorized as follows: (1) plaintiffs' own claim file discovery, (2) "other claim file" discovery, (3) Claim handling practices, training manuals and claim manual discovery and (4) punitive damage information discovery.

### i.      Plaintiffs' Own File is Discoverable

Because of the very nature of a contractual and extra-contractual action, the Plaintiffs have a substantial need for the claim file documents as "in a first party contractual and extra-contractual case such as this, where the insurance company has refused to pay benefits claimed under the policy, the critical issue is whether the company had a good faith basis for its decision….The insurance company's claims file constitutes the only source of this information." *Bergeson v. National Surety Corporation*, 112 F.R.D. 692 (Mont. 1986). Further, contractual and extra-contractual actions against an insurer, like actions by client against attorney, patient against doctor, can only be proven by showing exactly how the company processed the claim, how thoroughly it was considered and why the company took the action it did. The claims file is a unique, contemporaneously prepared history of the company's handling of the claim; in a case such as this the need for information in the file is not only substantial, but overwhelming. *Id.* (citing *Brown v. Superior Court in and for Maricopa County*, 137 Ariz. 327, 670 P.2d 725 (1983)). The claim file for Plaintiffs' claim is a crucial piece of evidence in this contractual and extra-contractual case. Other Courts and commentators from around the country have noted the importance and discoverability of the claim file in a contractual and extra-contractual insurance claim. *See, e.g. Boone v. Vanliner Ins. Co.*, 744 N.E.2d 154 (Ohio 2001); *Silva v. Fire Ins. Exch.*, 112 F.R.D. 699 (D. Mont.

1986) (insured may compel insurer to disclose entire claims file and may offer contents as exhibits at trial because bad faith can only be proved by showing manner in which claim was processed and claims file is sole source of this information). For the foregoing reasons, Plaintiffs' entire claim file is discoverable and the discovery relating to same should have been fully answered by Defendant.

### ii.    "Other Claim File" Information is Discoverable

The "other claim file" interrogatories and requests for production go to the very essence of Plaintiffs' claim of bad faith and, contrary to Defendant's objection, are very relevant to the matters at issue. Suffice it to say the information Plaintiffs seek in the interrogatories and requests for production is, at a minimum, reasonably calculated to lead to the discovery of admissible evidence. Likewise, Defendant's objections that this discovery is overly broad and unduly burdensome are without merit. This is a legitimate effort by Plaintiffs to uncover the grossly negligent claims handling practices of Defendant.  The Mississippi Supreme Court has specifically rejected an insurer's claim that reviewing 9,000 claim files to answer a discovery request was too burdensome. See *Crawley v. American Public Life Insurance Co.*, 603 So.2d 835, 841 n.4 (Miss. 1992).

Defendant does not even attempt to set forth any explanation of how or why the request is too burdensome. The fact is the Defendant simply does not want to answer this discovery. The Plaintiffs are entitled to legitimate discovery to determine if the wrongful denial/handling of the claim is an isolated incident or is indeed part of a much larger routine practice. In Mississippi, as in many other states, a "pattern and practice" or routine of unlawful or wrongful dealing by a Defendant is proper proof at trial of a bad faith claim. The material sought in these discovery requests is relevant as to the practices

and procedures utilized by the Defendant. See *Harvey-Latham v. Underwriters at Lloyd's*, 574 So.2d 13, 17 (Miss. 1990)(jury must weigh all facts surrounding the censured behavior to determine if punitive damages should be imposed; jury needs to know if defendant frequently engaged in such practices). Whether there is a widespread practice of treating other policy holders as Plaintiffs were treated is information which should have been revealed by Defendant upon our discovery requests. See *Crawley v. American Public Life Ins. Co.*, 603 So.2d 835, 841 (Miss. 1992)(discovery should be allowed to determine if insurer has a widespread practice of treating other policy holders in a manner similar to the insured). In *Hans Const. Co., Inc. v. Drummond*, 653 So.2d 253, 265 (Miss. 1995), the Mississippi Supreme Court stated that evidence like that sought by the Plaintiffs herein is admissible to establish a course of conduct by a defendant in their general business affairs which is sufficient to sustain punitive damages. See *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 1598, n.21 (1996)(referring to the relevancy of evidence of other alleged wrongdoing in other jurisdictions).

Defendant also objects to production on the basis the collection process would be unduly burdensome. This argument has been summarily rejected by a Federal District Court in *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76-77 (D. Mass. 1975), wherein the Court noted that a defendant may not excuse itself from compliance with discovery by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them. Mississippi agrees that the self-serving cry of "burden" is not enough to relieve the Defendant of producing other claim files. *Crawley v. American Public Life Insurance Co.*, 603 So.2d

835, 841 (Miss. 1992)(rejecting claim that having to review 9,000 claim files was too much of a burden). Therefore, even if collection of the documents is burdensome, this would not be a basis for denying the relevant discovery. If there is a problem in collecting the documents the problem is a creation of the Defendant's own record keeping system.

In a recent case, the Kentucky Supreme Court considered the production of other claims files and found that it was appropriate in a bad faith case. *Grange Mutual Insurance Company v. Trude*, 151 S.W.3d 803 (Ky. 2004). As the Grange court held "**it is enough for us to note that discovery information and documents related to similar claims involving other adjusters could reveal a pattern of bad faith conduct on the part of Grange. This would certainly be relevant to Wilder's bad faith claim**, regardless of whether such information was admissible at trial." *Grange Mutual Insurance Company*, 151 S.W.3d 803, 812. Therefore, other claim file information is proper in a bad faith suit and the discovery relating to same should have been fully answered by Defendant.

### iii.    Claim Handling Practices, Training Manuals, Claim Manuals, Database Manuals and System Manuals are Discoverable

Mississippi requires an insurer at a minimum to determine whether the policy provision at issue has been voided by a state or federal court, interview its agents and employees to determine if they have knowledge relevant to the claim, and make a reasonable effort to secure all records relevant to the claim. *Eichenseer v. Reserve Life Insurance Co.*, 682 F.Supp. 1355, 1366 (N.D. Miss. 1988). Further, Mississippi places a general duty on the insurer to promptly and adequately investigate all of the relevant facts involved in an insured's claim. *Szumigala v. Nationwide Insurance Co.*, 853 F.2d 274,

280 (5th Cir. 1988); *Bankers Life & Cas. Co. v. Crenshaw*, 483 So. 2d 254, 276 (Miss. 1985).

Therefore, exactly how the Plaintiffs' claim was handled is relevant to say the least. The fact that an insurer has failed to follow its own procedures and fulfill its own promises to the insured is one way to establish that an insurer acted unreasonably in denying coverage. *See Andrews v. Burke*, 55 Wash. App. 622, 626, 779 P.2d 740 (1989); *Nordstrom v. White Metal Rolling and Stamping Corp.*, 75 Wn.2d 629, 453 P.2d 619 (1969) (private industry standards and procedures are not only relevant, but are generally admissible on the issue of the standard of care). For this reason, materials detailing the claims handling procedures in effect at the time of the claim which is the subject of the contractual and extra-contractual suit are generally discoverable. *See Vining v. Enterprise Fin. Group, Inc.*, 148 F.3d 1206 (10th Cir. 1998) (insurer's training manual admissible); *Miel v. State Farm*, 912 P.2d 1333 (Ariz. App. Div. 1 1995) (claims manuals and in-house newsletters relevant); *State Farm v. Engelke*, 824 S.W. 2d 747, 753 (Tx. Ct. App. 1992) (documents, manuals and training materials used to train claims handlers relevant); *Champion Intern. Corp. v. Liberty Mut. Ins. Co.*, 129 F.R.D. 63, 67 (S.D.N.Y. 1989); *Grange Mutual Insurance Company v. Trude*, 151 S.W.3d 803 (Ky. 2004)("Grange's training and policy manuals are relevant to Wilder's bad faith claim, and absent some sort of privilege or other showing of irreparable harm, they are discoverable").

### C. Relevant, Responsive Information and Data in the Possession, Custody or Control of Defendant State Farm is in Electronic Form.

#### i. Scope of Electronic Data Discovery

Federal Rules of Civil Procedure 34 governs the production of documents, electronically stored information, and tangible things within the scope of Federal Rules of

Civil Procedure 26(b).  Federal Rules 26(b)(1) explicitly authorizes discovery about the location and existence of documents and other evidence and about the identity and location of persons having knowledge of discoverable matters.

Plaintiffs have taken the deposition of engineers hired by Defendant to inspect Plaintiffs' property four years after Hurricane Katrina.  At the depositions of engineers from The Structures Group, Deponent Michael Matthews, P.E., discussed communications with State Farm through the use of FileZilla, email, document repository access, FTP, and other electronic data communicating and sharing systems. (Exh. C, Excerpts of Matthews Deposition.) Defendant, State Farm, has not provided a description by category and location of any of these documents, electronically stored information, and tangible things as required by Federal Rules 26(a)(1)(A)(ii) and pursuant to Federal Rules 26(a)(b)(1).  Defendant should be compelled to provide this required information and data immediately.

Further, during the deposition of Mr. Hilgerson of Pilot Catastrophe Adjustment Services, Plaintiffs discovered that Defendant has improperly withheld and/or concealed relevant, responsive information and data regarding the investigation and adjustment of Plaintiffs' claims.  Pilot Catastrophe adjuster, Curtis Hilgerson, testified that he had a laptop and digital camera issued by Defendant State Farm to him with an ID No.  He further testified that after he finished his inspections he returned the laptop, digital camera and all paper files to Defendant State Farm.  (Exhibit D, Deposition Excerpts of Hilgerson.)  Mr. Hilgerson further testified that he delivered all of his file notes and materials to Defendant State Farm through State Farm's catastrophe office, if in paper

form, and through uploads to State Farm's shared server, if in electronic form. (See Exh. D, Excerpts of Hilgerson Deposition.)

During Mr. Hilgerson's deposition, he could not identify which photographs were the ones he took during his inspection. Had Defendant State Farm complied with the Federal Rules and with Plaintiffs' requested format of production, metadata regarding the inspection photographs uploaded to State Farm's shared server containing relevant, responsive information and data regarding the author of those digital photographs, when those photographs were taken, the identity of those editing the photographs and when those edits occurred would have been provided to Plaintiffs prior to the deposition of Mr. Hilgerson. Defendant State Farm has not provided this required and requested relevant information and data and should be compelled to do so immediately.

Further, Plaintiffs' claim file printed from the CSR database and furnished by Defendant State Farm in response to Plaintiffs' Requests for Production does not contain any of the information revealed in the depositions, is incomplete and contains unexplained changes. The location and nature of this information should have been provided, as required by Federal Rules 26(a)(1)(A)(ii), to Plaintiffs, without Defendant's awaiting a discovery request.

Also, on April 24, 2009, Defendant sent email correspondence to Plaintiffs' counsel disclosing Defendant had produced some Claims Service Records (CSR) with some fields "masked." (Exh. G, Email Correspondence re Masking.) Plaintiffs' requested that Defendant cure the production. To date Defendant has not even attempted to cure its production with regard to this known deficiency. Defendant should be compelled to cure this deficiency in its responses to Plaintiffs' requests, as well.

Moreover, though, Defendant State Farm has stated in its responses that emails will be supplemented, the only emails produced in this action have come from the State Farm department and/or database regarding mediations held due to Defendant's agreement with the Attorney General.  The few emails which have been produced further show the necessity of the required information of Federal Rules 26(a)(1)(A)(ii) regarding a description by category and location of all documents, electronically stored information (ESI), and tangible things, as these emails request movement of the Plaintiffs' electronic file from one database to another. (Exh. E, Emails).  Defendant has not supplemented requested relevant, responsive emails and should be required to produce all such emails, with attachments; producing them in the native format requested by Plaintiffs, organized by custodian or relevant folder and in chronological order; and in a reasonably useable form, meaning once searchable data cannot be produced in an unsearchable format.

Further, electronically stored information produced this case and represented as the Plaintiffs' "underwriting file" was produced by Defendant State Farm in the format of non-searchable, .pdf images of screen shots from the PDQ database.  This is not in the format requested by Plaintiffs, nor in the form required by the Federal Rules.  Further, the arbitrarily chosen format of production by Defendant State Farm is not even in a reasonably usable form, as Defendant State Farm converted searchable electronically stored data into non-searchable, .pdf images.

Moreover, had Defendant State Farm produced relevant, responsive information regarding the existence, description, nature, custody and location of documents, including electronically stored information (ESI), as requested by Plaintiffs', particularly, manuals on the databases and electronic claims files, Plaintiffs' would have been afforded the

opportunity to ascertain and specify exactly which reports to run from the PDQ database and other databases. (Exh. F, PDQ Reports.) Defendant should be required to produce all relevant, responsive information and data and/or a description by category and location of all documents, ESI and tangible things, including all database manuals and electronic claim file manuals immediately.

Defendant's refusal to discuss and provide electronically stored information in a usable format has needlessly burdened the Plaintiffs in the discovery of relevant, responsive information and data. Electronic data is searchable and contains relevant information embedded as metadata. The removal of metadata in converting electronically stored information into .pdf images, as done by Defendant in it production to Plaintiffs, destroys and spoliates relevant, discoverable data that the Defendant has a duty to preserve and produce.

Also, Defendant's claims that it cannot produce certain categories of data requested by Plaintiffs, such as that data that relates to claims handling complaints and/or specific categories, such as slab claims, in Mississippi from 2005, is or should be possible through the right report run or entry request from the database that holds that information. Proper inquiry by Defendants to its IT and/or Claims Handling representative should assist the Defendant in identifying the location and nature of the requested information and data, which will enable Defendant to be able to determine the best method of pulling this or any other specific request from the databases in State Farm's electronic data storage systems.

In *Zurich American Insurance Co. v. Ace American Reinsurance Co.,* 2006 U.S. Dist. LEXIS 92958 (S.D. N.Y. Dec. 22, 2006), a reinsurance action alleging bad faith failure to

pay claims, the plaintiff sought production of documents related to a particular category of claim denials. The defendant objected, stating that it was unable to segregate claim files by category of claim denial. The court expressed "little sympathy" for a defendant with an "opaque data storage system" and ordered the parties to devise a protocol for sampling the data.

### ii. Form of Electronic Data Production

Federal Rules 34 further permits the requesting party to designate the form or forms in which it wants electronically stored information produced. Specification of the desired form or forms may facilitate the orderly, efficient, and cost-effective discovery of electronically stored information.

> **(a) In General**. A party may serve on any other party a request within the scope of Rule 26(b):
>> (1) To produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:
>>> (A) any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or
>
> **(b) Procedure.**
>> (1) *Contents of the Request.* The request:
>>> (C) May specify the form or forms in which electronically stored information is to be produced.
>> (2) *Responses and Objections.*
>>> (D) Responding to a Request for Production of Electronically Stored Information. The response may state an objection to a requested form for producing electronically stored information. If the responding party objects to a request—the party must state the form or forms it intends to use.

Federal Rules Civil Procedure 34.

Federal Rule 34 recognizes that different forms of production may be appropriate for different types of electronically stored information.  Using current technology, for example, a party might be called upon to produce word processing documents, e-mail messages, electronic spreadsheets, different image or sound files, and material from databases.  Therefore the rule provides that the requesting party may ask for different forms of production for different types of electronically stored information. Plaintiffs have specified the format of production for electronically stored information. (See Exhibit B.)  Defendant has not produced the requested data in the requested format.

In the written response to the production request that Federal Rule 34 requires, the responding party must state the form it intends to use for producing electronically stored information, if the requesting party does not specify a form or if the responding party objects to a form that the requesting party specifies.  Stating the intended form before the production occurs may permit the parties to identify and seek to resolve disputes before the expense and work of the production occurs.  A party that responds to a discovery request by simply producing electronically stored information in a form of its choice, without identifying that form in advance of the production in the response required by Federal Rule 34(b), runs a risk that the requesting party can show that the produced form is not reasonably usable and that it is entitled to production of some or all of the information in an additional form.

In *White v. Graceland College,* the defendants were compelled to re-produce emails and attachments in native format after originally producing them in paper form.  The court cited the advisory committee notes for the 2006 FRCP amendments: "[i]f the responding party ordinarily maintains the information it is producing in a way that makes

it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature." See *White v Graceland College, Inc.* 586 F. Supp. 2d 1250, at 1263 (D. Kan., 2008)(Citing, Fed. R. Civ. P. 34(b) advisory committee's notes). Defendant has not asserted any objections to the specified format requested by Plaintiffs.

Federal Rule 34(a) requires that, if necessary, a responding party "translate" information it produces into a "reasonably usable" form. Under some circumstances, the responding party may need to provide some reasonable amount of technical support, information on application software, or other reasonable assistance to enable the requesting party to use the information. Again, if the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature. Without regard to Plaintiffs' specified format of production or the general rules regarding form of production, Defendant has produced non-searchable .pdf images of electronic data in a manner typically referred to as a "document dump". A document dump is the electronic equivalent of shuffling reams of files and dumping them on the requesting party. This tactic not only makes finding relevant information more difficult for the other side, but also more costly and time-consuming.

Form of Production relates to the order, categorization, labeling and data format of the production. In the event that the form of production is not specified, FRCP 34(b)(2)(E)(i) permits the responding party to produce documents or electronically stored information as they are kept in the usual course of business, or alternatively, the production must be organized and labeled in a way that corresponds to each production

request.  Defendant should be compelled to produce all relevant, responsive information, documents and data in the format requested and in either 1) the usual course of business, which would be to organize by custodian or relevant folder, in the order found on the server/hard drive or chronologically, and with attachments either connected to or directly following corresponding email, or 2) organized and labeled in a way that corresponds to each production request.  Defendant has not produced relevant, responsive information, documents, and data in the format requested by Plaintiffs and has not produced in the usual course of business, or in an organized and labeled manner.  Defendant merely provided Plaintiffs with a disk containing Bates labeled, unsearchable, .pdf images, not correlated to Plaintiffs' specific requests.  Defendant should be compelled to produce all relevant, responsive information, documents and data in the format requested by Plaintiffs and pursuant to the Federal Rules of Civil Procedure 34.

In *Bray & Gillespie Management LLC, et al. v. Lexington Ins. Co., et al.,* No. 6:07-cv-222-Orl-35KRS, the owner and operator of resorts in Florida filed suit against its insurer to recover damages to its properties caused by three hurricanes.  The insurance company disputed whether damages claimed were the result of three separate "occurrences" under the policy.  The plaintiff, in preparation for litigation, downloaded ESI in native format, converted it to TIFF images and, in the process, failed to capture relevant metadata.  The defendants objected to the plaintiff's production of the TIFF images and moved to compel production of ESI in native format.  Deciding this latest series of motions by the defendants, the court held that the production was not in the form requested by them, that the ESI was not in a reasonably useable form, that the plaintiff and its attorney concealed information and made material misrepresentations, and that

monetary and other sanctions were warranted against the plaintiff and various of its attorneys.

In the deposition of Pilot Catastrophe Services Adjuster, Curtis Hilgerson, Mr. Hilgerson testified that could not determine if he took the photographs produced by State Farm representing two separate site visits, even after he determined that he only made one site visit. Had these photographs been produced in native electronic format as requested by Plaintiffs, the metadata would have disclosed this relevant information, such as when the photographs were taken and by whom. (Exhibit D, Deposition Excerpts of Hilgerson.) Defendant State Farm should be compelled to produce this relevant, responsive information and data in the format requested by Plaintiffs, immediately.

Further, Defendant State Farm's claim file production has a handwritten note stating that there is no information in the file regarding the site inspection performed by Pilot Catastrophe Services Adjuster, Ida McAllister. Had the information and data on the laptops of Ida McAllister and Curtis Hilgerson of Pilot been properly persevered, the information and data regarding the inspections performed in late September of 2005, and October of 2005, would be available for Plaintiffs to determine what information and data was associated with which custodian and what information and data State Farm relied upon to deny Plaintiffs' claims and why State Farm hired another Pilot adjuster, Mr. Hilgerson, to perform a second inspection.

Defendant's refusal to discuss and provide electronically stored information in a usable format has needlessly burdened the Plaintiffs in the discovery of relevant, responsive information and data. Electronic data is searchable and contains relevant information embedded as metadata. The removal of metadata in converting

electronically stored information into .pdf images, as done by Defendant in its production to Plaintiffs, destroys and spoliates relevant, discoverable data that the Defendant has a duty to preserve and produce.  Furthermore, Defendant's "data dump" is non-responsive to Plaintiffs' requests and Defendant should be compelled to properly respond to Plaintiffs' discovery requests immediately.

### iii.  Duty to Preserve and to Locate Electronic Data

The source of pre-discovery obligations to preserve potential sources of discoverable electronically stored information is found in common law. *See Silvestri v. GM,* 271 F.3d 583 (4th Cir. 2001).  The duty to preserve applies to any and all relevant documents, tangible things, or electronic information in the possession, custody, or control of a party no matter where located.  *See Leon v. IDX Systems,* 464 F.3d 951, 955-957, 961 (9th Cir. Sept. 2006)(upholding sanction against a terminated whistleblower plaintiff who had deleted data from his company-furnished laptop).  The knowledge or belief that litigation has begun or is imminent "triggers" preservation obligations and requires that reasonable steps be undertaken to maintain relevant and discoverable information pending discovery, including third party discovery. *See In re Napster, Inc. Copyright Litigation,* 2006 WL 305086 at *6 (N.D. Cal. Oct. 25, 2006)(service of and compliance with a non-party subpoena is not necessarily sufficient notice of future litigation).

After the deposition of Curtis Hilgerson and other independent adjusters hired by State Farm, it is apparent that State Farm issues company owned laptops and digital cameras to independent adjusters. (See Exh. D, Excerpts of Hilgerson Deposition.) This electronic equipment has a serial number which is logged as being checked out to an adjuster through the adjuster's ID number.  In the instance of Mr. Hilgerson, one of the

Pilot adjusters on the Lebon v SFFCC claim, had the photographs been produced in native electronic form, Plaintiffs would have the additional relevant data that they are entitled too, for example, the author of photos taken, the date the photos were taken, the camera the photos were taken with and format the photos were taken in. Further, had the information on the laptop of Ida McAllister of Pilot been properly persevered, the information regarding the inspection she took in late September, 2005 would be available for Plaintiffs to determine what information State Farm relied upon to deny Plaintiffs claims and why State Farm hired another Pilot adjuster, Mr. Hilgersom, to perform a second inspection. Proper inquiry by Defendant to its IT and/or Claims Handling representative should assist the Defendant in identifying the location and nature of the requested information and data, which will enable Defendant to determine whether information was properly preserved and the best method of pulling this information and/or data or any other specific request for information and/or data from the databases in State Farm's electronic data storage systems.

The Committee Notes to Federal Rule 26(b)(2) and Federal Rule 37(e) make clear that preservation obligations may apply even when electronically stored information is located on an inaccessible source. The Note to Federal Rule 26(b)(2) provides that "a party's identification of sources of electronically stored information as not reasonably accessible does not relieve that party of its common-law or statutory duties to preserve evidence." Moreover, the Note to Federal Rule 37(e) instructs that parties may not "exploit the routine operation of an information system to thwart discovery obligations by allowing that operation to continue in order to destroy specific stored information that it is required to preserve."

An organization should consider all data sources within its "possession, custody, and control" that are likely to include relevant, unique information. *See The Sedona Conference Commentary on Legal Holds: The Trigger & the Process* (August 2007 Public Comment Version). This includes data sources within the physical possession of the organization, and other sources within the possession or custody of third parties, pursuant to contractual or other relationships, such as information held by Application Service Providers (ASPs) and other service providers. *Id.* This would also include information in the possession of independent adjusters, such as Pilot, and engineers such as the Structures Group, WJE and other experts that are in the control of State Farm pursuant to a contractual or other relationship.

Many organizations assign the lead coordination role for e-discovery to their Legal Department, which collaborates with IT, compliance, and records management departments or functions. *See Zubulake v. UBS Warburg,* 229 F.R.D. 422, 435 (S.D. N.Y. 2004)(*Zubulake V"*) ("counsel [both employed counsel and outside counsel] [are] responsible for coordinating her client's discovery efforts.  In this case counsel failed to properly oversee UBS in a number of important ways, both in terms of its duty to locate relevant information and its duty to preserve and timely produce that information").

Defendant's continued refusal to discuss and produce relevant information regarding Defendant's documents retention policies and electronic data storage systems are cause for great concern regarding the preservation and location of potentially relevant, responsive information and data regarding Plaintiffs' claims and Defendant's defenses. Plaintiffs would like to know what steps Defendant has taken to identify, locate and preserve potentially relevant electronically stored information and data.

In *Phoenix Four, Inc. v. Strategic Resources Corp.,* the court sanctioned a party and its law firm for failure to locate inaccessible information because it did not conduct a "methodical survey of [Defendants] sources of information" in the manner said to be required by the 2006 Amendments. Common nesting places for inaccessible data are back-up tapes, workstations, and other portable data storage devices, information sources that foreseeably will leave the entity's facilities in normal use or through hardware repurposing or retirement. State Farm's practice of checking out laptops and digital cameras could be viewed as a practice of spoliating potentially relevant data if there is no defined way of preserving the data before the data is overwritten or lost.

In *Cache La Poudre Feeds v. Land O'Lakes*, the court sanctioned the failure to retain the hard drives of key former employees while questioning the basis for the General Counsel's belief that the relevant information could be found in a more readily accessible location, given that General Counsel was aware that the email backup tapes were not being retained, but were being recycled. 2007 WL 68401 (D. Colo. March 2, 2007). Proper inquiry by Defendant to its IT and/or Claims Handling representative should assist the Defendant in identifying the location and nature of the requested information and data, which will enable Defendant to determine whether information was properly preserved and the best method of pulling this information and/or data from the databases in State Farm's electronic data storage systems.

In *PML North America v. Hartford Underwriters Ins. Co.,* 2006 U.S. Dist. LEXIS 94456 (E.D. Mich. Dec. 20, 2006), a court order established a protocol for electronic discovery in an insurance-related fraud action. The court later ordered the defendant to produce hard drives and other media for inspection by a computer forensic expert. The

expert reported evidence of tampering and data spoliation, prompting defense counsel to admit in court that "it looks bad."  While acknowledging counsel's candor, the court stated that "there is a point beyond which bumbling and blindness to a party's discovery obligations sufficiently resemble the sort of willful, intentional and malicious conduct that calls for the heavy sanction of judgment by default."  The court granted the plaintiff partial summary judgment.

Defendant should be compelled to provide the identity and location of relevant and potentially relevant information and data and to properly respond to Plaintiffs' discovery requests immediately.

## III.    CONCLUSION

Defendant's refusal to discuss and provide electronically stored information in a usable format has needlessly burdened the Plaintiffs in the discovery of relevant, responsive information and data.  Electronic data is searchable and contains relevant information embedded as metadata. The removal of metadata in converting electronically stored information into .pdf images, as done by Defendant in its production to Plaintiffs, destroys and spoliates relevant, discoverable data that the Defendant has a duty to preserve and produce.  Furthermore, Defendants' "data dump" is non-responsive to Plaintiffs' requests and Defendant should be compelled to provide the identity and location of relevant and potentially relevant information and data and to properly respond to Plaintiffs' discovery requests immediately.

WHEREFORE PREMISES CONSIDERED, Plaintiffs respectfully request that this Honorable Court compel Defendant to produce all required relevant information, documents, and data and/or describe by category and location, including custodian, all

relevant information, documents and data, and to properly respond to Plaintiffs' Interrogatory No. 21 and Requests for Production Nos. 7, 8, 20, 22 and 24, immediately. Further, Plaintiffs request that this Honorable Court compel Defendant to describe its process for identifying and preserving relevant information, documents and data. Plaintiffs further request that this Honorable Court grant them attorney fees and costs associated with the preparation of this Motion and any an all other such relief in favor of Plaintiffs this Court deems just.

Respectfully submitted, this the 10th day of December, 2009.

MARION S. LEBON and LISA L. COWAND, Plaintiffs

BY:    /s/Deborah R. Trotter
        DEBORAH R. TROTTER, MSB: #101360
        Merlin Law Group, P.A
        368 Courthouse Road, Suite C
        Gulfport, MS  39507
        Telephone (228) 604-1175
        Fax (228) 604-1176
        Email: dtrotter@merlinlawgroup.com
        Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I, Deborah R. Trotter, do hereby certify that a copy of the preceding Memorandum in Support has been served via email, to the following:

Hal S. Spragins, Hickman, Goza & Spragins, P.O. Drawer 668, Oxford, MS 38655, sspragins@hickmanlaw.com

This the 10th day of December, 2009.

/s/Deborah R. Trotter
Deborah R. Trotter, MSB #10136
Merlin Law Group, P.A
368 Courthouse Road, Suite C
Gulfport, MS  39507
Telephone (228) 604-1175
Fax (228) 604-1176
Email: dtrotter@merlinlawgroup.com
Attorneys for Plaintiffs